Martin FITZPATRICK, John Nelson,
Curtis Johnson, Plaintiffs,

v.

Ronald WERT, Guard Union, Local 1040,
David E. Lynch, William J. Conners III,
Benjamin J. Ward, Commissioner, N.Y.S.
Department of Correctional Services, and
Harold J. Smith, Superintendent, Attica
C.F., Defendants.

Civ. No. 77–249.

United States District Court,
W. D. New York.

May 27, 1977.

Martin Fitzpatrick, pro se.

CURTIN, Chief Judge.

Plaintiffs have submitted to the court a civil rights complaint (42 U.S.C. §§ 1983 and 1985) along with an affidavit of poverty and seek permission to proceed in forma pauperis. 28 U.S.C. § 1915.

On December 2, 1976, the Buffalo Courier-Express carried a story, written by reporter David E. Lynch, which was headlined: "Attica Inmates Reported Ready to Demonstrate." The first two paragraphs of that story read:

Attica prisoners plan to demonstrate if the state legislature does not act favorably on their proposals by mid-January, according to the head of the guards' union there.

"They say they are going to do their thing," union president Ronald Wert said, "and it's not going to be peaceful this time."

Mr. Wert was referring to the peaceful demonstration of inmate support for a proposed prison reform package which many Attica inmates sought to bring to public attention by remaining in their cells during a seven-day period in August 1976. The remainder of the news story focused on aspects of corrections reform legislation, particularly on proposed revisions in the parole procedures.

Plaintiffs have alleged that this single reported statement by Mr. Wert deprives them, and the class they purport to represent, of equal protection of the laws and of other privileges and immunities under the Constitution. This allegation is founded on plaintiffs' expressed belief that Mr. Wert's statement was made in an attempt to intimidate, threaten and put fear of loss of life into plaintiffs and other inmates.

Plaintiffs also seek to sue the following:

(1) Reporter David Lynch, whom plaintiffs contend conspired with defendant Wert to deprive them of rights, privileges and immunities under the Constitution, in violation of 42 U.S.C. § 1985, by reporting defendant Wert's statement;

(2) Guard Union, Local 1040, which allegedly condoned defendant Wert's statement;

(3) Commissioner Benjamin Ward and Superintendent Harold Smith, who allegedly failed to use their authority to stop publication of the article and other acts of defendant Wert; and

(4) William J. Conners, III, president and publisher of the Buffalo Courier-Express, who allegedly allowed publication of the December 2, 1976 article and of an editorial entitled "Prisoner Threats Could Hamper Reforms"

which appeared in the Courier-Express on December 4, 1976.

After reviewing the claims made by plaintiffs, I have concluded that this action is patently frivolous and must be dismissed pursuant to 28 U.S.C. § 1915(d).

■ At the outset, the claim against the prison guards' union is clearly not cognizable here since the union is not a "person." See Monell v. Dept. of Social Services, 532 F.2d 259, 262-63 (2d Cir. 1976).

■ Even read liberally, the statement attributed to Mr. Wert cannot be said to constitute an abuse of prisoners by corrections personnel. Plaintiffs' pleadings indicate that this was an isolated instance where a prison guard (who is also president of the guards' union) expressed a personal opinion to the news media that inmates intended "to do their thing" in support of proposed prison reform legislation and that the inmates might not be peaceful in doing it. This alone fails to support a claim under 42 U.S.C. § 1983 that words or actions of corrections personnel posed an immediate threat to the safety and welfare of inmates or that supervisory personnel directly abused inmates. See, e. g., Holt v. Hutto, 363 F.Supp. 194, 215 (E.D.Ark.1973), modified sub nom. Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974). Plaintiffs have not alleged that disturbances occurred at Attica or that anyone was injured as a direct result of Mr. Wert's statement to the press. Nor is there any indication in the complaint of an evil intent or recklessness on Mr. Wert's part, or even deliberate indifference to the consequences of his conduct for the inmates for whom he was responsible. See Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974); Williams v. Field, 416 F.2d 483 (9th Cir. 1969), cert. denied, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970); Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970).

■ For these same reasons, I must conclude that the complaint is also frivolous with respect to Commissioner Ward and Superintendent Smith, who are charged with having condoned Mr. Wert's words

and actions. In addition, Commissioner Ward and Superintendent Smith cannot be held liable in a § 1983 action for any of Mr. Wert's actions merely because of the fact that they are Mr. Wert's superiors. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973).

■ Defendants Lynch and Conners cannot be held liable under 42 U.S.C. §§ 1983 or 1985 for doing that which is their constitutionally-protected right as newsmen. There is a well-entrenched tradition in this country that freedom of expression should not be limited or infringed by either public or private authority. This basic and essential principle is articulated in the first amendment and has been affirmed by a long series of Supreme Court decisions. *See, e. g., Stromberg v. California*, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); *Bridges v. California*, 314 U.S. 252, 270, 62 S.Ct. 190, 86 L.Ed. 192 (1941); *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

In his concurring opinion in *Whitney v. California*, 274 U.S. 357, 375–76, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927), Justice Louis D. Brandeis gave the principle of freedom of expression its classic formulation:

Those who won our independence believed . . . that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they es-

chewed silence coerced by law—the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed.

More recently, the Supreme Court has recognized the significance of the role of the press in our system of free expression:

The Constitution specifically selected the press . . . to play an important role in the discussion of public affairs. Thus the press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials . . . . Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change . . . muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free.

*Mills v. Alabama*, 384 U.S. 214, 219, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966).

In other contexts, inmates have sought to broaden the scope of free expression and to facilitate access to the news media. *See, e. g., Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Nolan v. Fitzpatrick*, 451 F.2d 545 (1st Cir. 1971); *Burnham v. Oswald*, 342 F.Supp. 880 (W.D.N.Y.1972). In this action, inmates seek to limit such free expression and to put strictures on a news reporter, a publisher and their sources. For plaintiffs to allege that defendants Lynch and Conners, by reporting the news and providing editorial comment on current events, were thereby involved in a conspiracy to deprive plaintiffs of equal protection of the laws and of equal privileges and immunities under the laws, borders on the preposterous. Any efforts that plaintiffs and other inmates may be engaged in to foster a peaceful and rational atmosphere at Attica are to be commended. However, this suit is not the appropriate vehicle for plaintiffs to seek redress of their expressed grievances.

For the reasons stated above, the suit is dismissed as frivolous pursuant to 28 U.S.C. § 1915(d).

Permission to proceed further in forma pauperis is denied except that the Clerk is directed to file the complaint without payment of fees by the plaintiffs.

Permission to appeal in forma pauperis is also denied, with the qualification that the plaintiffs may file with the Clerk of the United States District Court, United States Court House, Buffalo, New York, a notice of appeal, without the payment of filing fees.

Further requests for permission to appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, Foley Square, New York City, in accordance with the requirements of Rule 24(a) of the Federal Rules of Appellate Procedure.

So ordered.